UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

KIMBERLY MARGOTTA,

                Plaintiff,

   - against -                 13 Civ. 3219 (RWS)

                             OPINION

CAROLYN COLVIN,
Acting Commissioner of Social Security

              Defendant.

------------------------------------------X

A P P E A R A N C E S:

ATTORNEYS FOR PLAINTIFF

IRWIN M. PORTNOY AND ASSOCIATES, P.C.
542 Union Avenue
New Windsor, NY 12553
By:  Irwin M. Portnoy, Esq.

ATTORNEYS FOR DEFENDANT

PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, NY 10007
By:  Graham Morrison, Esq.
     Stephen P. Conte, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/23/14

**Sweet, D.J.**

Plaintiff Kimberly Margotta ("Margotta" or "Plaintiff") has moved pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the proceedings and review of an adverse decision of the defendant Carolyn Colvin ("Commissioner" or "Defendant"), Acting Commissioner of the Social Security Administration ("SSA"), denying disability benefits under the Social Security Act (the "Act"). The Commissioner subsequently cross-moved for judgment on the pleadings. Based on the conclusions set forth below, the Commissioner's motion is granted, and Plaintiff's motion is denied.

**Procedural History**

Plaintiff filed for Disability Insurance Benefits ("DIB") on October 24, 2008 and Social Security Income ("SSI") on November 19, 2008. T199-20, 201-203.[1] On February 13, 2009, the SSA denied Plaintiff's application. T116-28. Plaintiff requested a hearing and subsequently appeared before Administrative Law Judge Katherine Edgell (the "ALJ") on October 4, 2011 (the "Hearing"). T67-91. In a Decision on October 28,

---

[1] All references to "T___" are to the numbered pages of the SSA Administrative Record filed with the Court as ECF No. 8.

2011 (the "ALJ Decision"), the ALJ found that Plaintiff was not disabled. T14-24. Plaintiff requested the Appeals Council to review the ALJ's decision, and the Appeals Council denied review on March 7, 2013. T1-6.

Plaintiff subsequently filed the Complaint in the instant action on May 14, 2013 (the "Complaint"). Plaintiff made the instant motion on January 31, 2014. The Commissioner cross-moved for judgment on the pleadings on April 7, 2014. The matter was marked fully submitted on April 17, 2014.

**Statement of Facts**

*Testimony On Behalf Of Plaintiff*

The following information was provided as testimony by the Plaintiff at the Hearing or elsewhere on the record:

Plaintiff was born in 1966 and was 44 years old at the time of the Hearing. T45. Margotta lives in a basement downstairs from her father. T43-44, 46, 233. She has completed high school and some college courses, but did not graduate college. T46.

Plaintiff has previously worked as an office manager, customer service representative at Kohl's and assistant manager at KB Toys. T46-48. She has also worked in web design and other tasks from 1997 to 2002. T49.

Plaintiff testified that she has been disabled since January 15, 2003. T14; *see also* Compl. ¶ 5. Since that time, Plaintiff has not been able to work as she suffers from migraines and pain in her neck, back, arms and legs. T48-50. Plaintiff has a driver's license, but does not drive often because she feels discomfort when pushing on the car's pedals. T82. Plaintiff testified that she had symptoms of depression caused by her son's suicide in 2007, T49, and that she has a history of mental illness since she was a child. T50. Plaintiff has trouble with her memory, including her long-term memory. T57-58.

Plaintiff testified that she suffers from chronic obstruction pulmonary disease which causes pain in her chest. T61. Plaintiff sometimes experiences limitations in her ability to walk which is dependent on the weather: during times of muggy weather, Plaintiff cannot walk, but on days with good weather, Plaintiff can walk 10 feet. T61-62. The record does not indicate as to whether this is related to Plaintiff's chronic obstruction

pulmonary disease. Plaintiff testified that she cannot pick things up due to pain or use a computer due to stabbing sensations in her fingers. T62.

In activities of daily living worksheet, Plaintiff indicated that she had no problems attending to her own personal care, including dressing, bathing, grooming and feeding herself. T233-34. She also indicated that she does her own laundry. T235. Plaintiff leaves her house between two to three times a week, T235, either by foot or car, T235. Her hobbies included reading, watching TV, playing tennis and swimming. T236. Plaintiff speaks with friends and family one to two times per week. T237.

Mr. Rocco Meola ("Meola") testified at the Hearing as a vocational witness. When inquired by the ALJ as to the sort of work someone with Plaintiff's vocation profile could perform, Meola testified that Plaintiff could perform unskilled medium work. T87. On a national level, these types of jobs in the aggregate exists in numbers of approximately 30,000; for the Hudson Valley region, 700. T88. The ALJ also posed Meola with a hypothetical person with Plaintiff's vocational profile who can sit for up to eight hours a day, three hours at one time; stand for up to five hours a day, an hour at a time; walk up to three

hours a day, an hour at a time; can lift up to 20 pounds continuously and up to 50 pounds occasionally, but only carry up to 20 pounds continuously; can frequently engage in overhead reaching, and continuously reach in all other planes, as well as handle, finger, feel push, pull; occasionally climb ladders or scaffolds; occasionally be exposed to unprotected heights; but cannot be exposed to dusts, odors, fumes, pulmonary irritants and extremes of temperatures and vibrations; and can be exposed only to moderate office noise, and inquired as to any unskilled jobs such hypothetical person could perform. According to Meola, there are such jobs (examples include inspector and hand packager, assembler of molded frames and a tag machine operators): there are approximately 45,000 such jobs at the national level and 1,300 such jobs in the Hudson Valley region. T88-89. Upon inquiring as to whether such hypothetical person is hirable if he or she also had marked limitations in concentration such that concentration is variously interfered with, Meola testified that such an individual would not be employable. T89.

*The Medical Evidence*

*Dr. Goddard Lainjo*

Plaintiff diagnosed her health troubles for the first time on October 22, 2003, when Dr. Goodard Lainjo diagnosed Plaintiff with fibromyalgia syndrome with moderate to severe disease activity by global assessment. In this diagnosis, Plaintiff's physical examination was negative for muscle weakness or trigger points. T573. Treating notes from Dr. Lainjo indicates additional diagnoses of mild-to-moderate rheumatoid arthritis and mild-to-moderates fibromyalgia syndrome with some tender points on examination. *Id.* Multiple serological findings were negative. T553, 562, 571-75, 587-603. Dr. Lainjo prescribed Plaintiff with a nonsteroidal anti-inflammatory medication three times a day to treat her symptoms.

*Dr. Francis Nardella*

On October 6, 2005, Dr. Francis Nardella examined Plaintiff and concluded that she suffered from severe fibromyalgia with chronic fatigue and sleep disorder, chronic headaches, probable irritable bowel, chronic generalized musculoskeletal pain and positive tender points over the left lateral epicondyle, trapezius, supraspinatus muscles, lower lateral cervical regions, suboccipital regions, gluteus muscles, greater trochanteric bursa and medial aspects of knees on examination. T595. Dr. Nardella's notes indicate that Plaintiff

7

developed chronic generalized musculoskeletal pain 15 years from
the date of the examination following a motor vehicle accident
and that this pain was generalized. T594.


*Dr. Neal Dunkelman*


In November 2006, Dr. Neal Dunkelman diagnosed
Plaintiff with chronic pain syndrome and fibromyalgia. T559-60.
At this examination, Plaintiff reported having problems for more
than 10 years, trying physical therapy in the past and being on
Oxycontin 40 mg every 12 hours for approximately one year. T559.
Plaintiff also reported having tried a variety of medications,
including Vicodin, Tylenol #3, Lyrica and muscle relaxants. Dr.
Dunkelman found no focal, sensory or motor deficits but lumbar
flexion was limited to 10 degrees, extension 0 degrees and
cervical range of motion was restricted. At this visit, Dr.
Dunkelman extended Plaintiff's prescription for Oxycontin.


Pursuant to Dr. Dunkelman's referral, Plaintiff
underwent a magnetic resonance imaging ("MRI") scan of her
cervical spine in January 2007. The MRI showed no obvious issues
except for a small right paracentral herniated disk at C4-C5,
with a normal spinal cord and neural foramina. T373, 553. A
computerized axial tomography ("CAT") scan showed chronic

obstructive pulmonary disease with scarring in both lungs, but no evidence of mass, nodules or infiltrates. T368, 372. Records of subsequent treatments showed normal respiratory effort, with no wheezing, rubs, rhonchi or rales. T695. The record indicates that Plaintiff had been a long-time smoker, consuming one pack per day for the past 30 years. T379, 616.

At this time, Plaintiff's pain complaints were primarily treated with narcotic analgesics. T522. On February 23, 2007, Dr. Dunkelman noted that "in view of [minimal] MRI findings, I do not feel [Plaintiff] should be on chronic narcotic medications." *Id.*

Plaintiff underwent another MRI in April 2009. T534. The MRI found straightening of the normal cervical lordosis consistent with muscle spasm. However, the intervertebral disc spaces were well maintained, and there was no evidence of disc bulging, disc herniation, canal stenosis or foraminal stenosis. *Id.*

*Dr. Martin Grant*

Dr. Martin Grant examined Plaintiff on December 11, 2006, and diagnosed Plaintiff with hypertension, depression and

9

fibromyalgia. T368.

*Dr. Stanley Giudici*

Dr. Stanley Giudici treated Plaintiff on December 12, 2007 and November 24, 2008. T564-70. During Dr. Giudici's examination of Plaintiff, the doctor noted that Plaintiff had suffered from more than three episodes of major depression in the past. T566. In the examination, Plaintiff reported constant, well-localized, aching, numb, tingling, sharp, burning and shooting pain in the lower back. T568. Dr. Giudici diagnosed Plaintiff with major depressive disorder, recurrent; post-traumatic stress disorder; generalized anxiety disorder; social anxiety disorder; obsessive-compulsive personality disorder; restless leg syndrome, primary; hypothyroid; and cervical disk disease in C4-5. T569.

*Dr. Steven Rocker*

On December 31, 2008, Plaintiff saw Dr. Steven Rocker for a consultative examination with complaints of "pain everywhere" with no localization of the pain. T295. During the examination, Plaintiff reported that she was diagnosed with asthma at age 25, had "three herniated disks in [her] neck" and

10

was diagnosed with bipolar disorder earlier that year. T295. In his examination report, Dr. Rocker noted that Plaintiff "is independent in cooking, cleaning, laundry and shopping" and that she "is able to shower, bath and dress independently." T296. Plaintiff also used no assistive devices, needed no help changing for the exam or getting on and off the exam table and was able to rise from the chair without difficulty. T296. The examination found that she had full strength (5/5) in her upper and lower extremities. T297. Plaintiff had fully intact hand and finger dexterity and full grip strength bilaterally. T298. Dr. Rocker found no limitations for hearing, speaking, sitting and handling and mild limitations for standing, walking, lifting and carrying. T298. Dr. Rocker diagnosed her with multiple myalgias with a history of total body pain. T295. Dr. Rocker further noted that Plaintiff had a history of chronic obstructive pulmonary disease (asthma). T298.

*Dr. Alan Dubro*

On the same day as her examination with Dr. Rocker, psychologist Dr. Alan Dubro performed a psychiatric consultative examination on Plaintiff at the request of the New York State Division of Disability Determinations. T290-94. In his psychiatric evaluation, Dr. Dubro noted that Plaintiff had never

11

received any psychiatric treatment. T290. Dr. Dubro found
Plaintiff's manner was cooperative, her speech was fluent and
clear and her language skills were adequately developed. T291.
Plaintiff's thought processes appeared coherent and goal-
directed with no evidence of delusions, hallucinations or
thought disorders. T291. At the examination, Plaintiff's mood
was euthymic, she had full affect and she fully oriented to
person, place and time. *Id.* Her attention and concentration were
intact, and Plaintiff was able to perform simple mental
arithmetic and serial 3s. T292. Plaintiff's recent and remote
memory skills were mildly impaired upon distractions associated
with pain. *Id.* Dr. Dubro opined that Plaintiff could follow,
understand and attend to directions and instructions. *Id.* Dr.
Dubro concluded that the results of the exam were "consistent
with pain-related symptoms," but that these symptoms "[did] not
significantly interfere with [Plaintiff's] ability to function
on a daily basis." T293.

   *Dr. T. Inman-Dundon*

   On January 16, 2009, state agency psychiatrist Dr. T.
Inman-Dundon reviewed Plaintiff's record and issued a mental
residual functional capacity report ("MRFC"). T328-30. The
report found no significant limitation in Plaintiff's abilities

12

to remember locations and work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, make simple work related decisions, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, be aware of normal hazards and take appropriate precautions, and travel in unfamiliar places or use public transportation. T328-329. A moderate limitation was found in the remaining categories, including Plaintiff's ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, respond appropriately to changes in the work setting and set realistic goals, and make plans independently of others. T328-329. No marked limitations

13

were found in any category. T328-329. Dr. Inman-Dundon concluded that Plaintiff retained the abilities to perform the mental demands of unskilled work. T330.

*Dr. Paul Schefflein*

On February 8, 2010, Plaintiff began treatment with Dr. Paul Schefflein of Northern Psychiatric Services. T400, 404-11. At this time, Dr. Schefflein diagnosed Plaintiff with bipolar disorder and Fibromyalgia. T409-11.

On July 20, 2010, Dr. Schefflein assessed the Plaintiff again and noted "marked" deficiencies with regards to Plaintiff's ability to concentrate, be persistent or keep a pace that allows her to complete tasks in a timely manner. T427. According to the chart which Dr. Schefflein used for his evaluation, "marked" means more than moderate, but less than extreme. *Id.* Dr. Schefflein also noted that Plaintiff had poor memory, sleep disturbance, mood disturbance and emotional liability. T424. He concluded that Plaintiff would have difficulty working at a regular job on a sustained basis and that she would likely miss work more than three times a month. T427.

14

Dr. Schefflein saw Plaintiff at least eight times starting in February 2010 to June 2011 including visits on March 18, 2010, April 20, 2010 and May 18, 2010. T410, 604-07. Dr. Schefflein's treating notes indicate that Plaintiff was coherent, had normal motor activity, had an intact memory and had good concentration, retention of information and impulse control in at least one visit, possibly from Plaintiff's February 8, 2010 visit. T407-08. His handwritten notes do not provide further information as to Plaintiff's mental and physical functional abilities other than noted above. Other than noting that Plaintiff was diagnosed with Fibromyalgia, no other physical symptoms of Plaintiff's were noted in Dr. Schefflein's notes.

*Dr. Carol Taylor*

On August 9, 2010, Plaintiff was examined by Dr. Carol Taylor, Plaintiff's primary care physician. T610-16. Dr. Taylor's notes from this examination indicate that Plaintiff has a past medical history of fibromatoses; migraines; bipolar disorder; peptic ulcer; chronic airway obstruction; and hypothyroidism. T621. Plaintiff first went to see Dr. Taylor about Fibromyalgia on October 8, 2010. T629. For her symptoms, Dr. Taylor prescribed Oxycotin 30 mg every 12 hours, Zanaflex 4

15

mg and Ambien 10 mg.

On August 4, 2011, due to Plaintiff's continued use of Oxycontin to treat her pain symptoms, Dr. Taylor noted that Plaintiff was "clearly addicted" to Oxycontin, given her duration of use of the drug and behavior. T695. At this visit, Dr. Taylor tried to dissuade Plaintiff from continuing to use Oxycontin in the same amount and frequency, but her warnings did not appear to dissuade Plaintiff. *Id.*

*Dr. Kautilya Puri*

Plaintiff was examined by Dr. Kautilya Puri on July 6, 2011. T576. Plaintiff was referred to Dr. Puri by the New York State Division of Disability Determination for a neurological examination. In the examination, Dr. Puri noted mild, generalized, decreased range of motion of the cervical spine with mild local tenderness and a few trigger points, bilaterally, in the neck, shoulders and back, as well as giveaway weakness of the hands. T578. The physical examination showed normal range of motion of the thoracic/lumbar spine, negative straight leg raising, bilaterally, and full muscle strength in the upper and lower extremities, with no muscle atrophy, weakness, sensory or reflex deficits in the upper or

16

lower extremities. T578. Dr. Puri found "no objective limitations to gait, fine or gross motor activities, communication or activities of daily living." T579.

As part of her assessment, Dr. Puri opined that the claimant could lift up to 50 pounds, occasionally, and lift or carry 20 pounds continuously. T580. She further determined that Plaintiff could sit for eight hours at three hour intervals, stand for five hours and walk for three hours, each at one hour intervals. T581. Plaintiff could reach overhead frequently and had no other limitations in the use of her hands or feet, could occasionally climb ladders or scaffolds and frequently engage in all other postural activities. T580-585. Dr. Puri concluded that Plaintiff could work in an environment with moderate noise, at occasional heights and frequently with moving mechanical parts. T584. No other limitations were found, except that Plaintiff should avoid pulmonary irritants, vibration and temperature extremes. T580-585.

*The ALJ Decision*

On October 4, 2011, the ALJ held a video hearing in connection with Plaintiff's claim for disability insurance benefits. On October 28, 2011, the ALJ Decision concluded that

17

Plaintiff was not disabled within the meaning of the Act from January 15, 2003 through the date of the ALJ Decision. *In the Case of Kimberly A. Margotta*, Administrative Hearing at 1 (Oct. 28, 2011); T14. The ALJ made the following findings:

1.  Plaintiff met the insured status requirement of the Social Security Act through December 31, 2008.

2.  Plaintiff has not engaged in substantial gainful activity since January 15, 2003, the alleged onset date. Plaintiff did seasonal work from December 2003 to February 2004 and from December 2004 to February 2005.

3.  Plaintiff has the following severe impairments: small cervical disc herniation per MRI in 2007, with no current diagnostic imaging evidence of disc herniation or other cervical pathology; chronic pain, variously diagnosed as chronic pain syndrome, fibromyalgia, rheumatoid arthritis, arthralgias/polyarthralgias; migraine headaches; chronic obstruction pulmonary disease; hypothyroidism; and a mental impairment, at various times diagnosed as bereavement, bipolar, depressive, anxiety, compulsive-obsessive personality and/or posttraumatic stress disorders. These impairments were found to be "severe".

4.  Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.  Plaintiff has the residual functional capacity to perform a full range of light to a limited range of medium work, as defined in 20 CFR 404.15676(b)(c) and 416.967(b)(c). She is further limited to unskilled work that does not require exposure to concentrated respiratory irritants.

6.  Plaintiff is unable to perform any past relevant work.

7.  Plaintiff was born on April 3, 1966 and was 36 years old, which is defined as "a younger individual age 18-

49" on the alleged disability onset date.

8.  Plaintiff has at least a high school education and is able to communicate in English.

9.  Plaintiff has no acquired work skills from past relevant work.

10. When considering Plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

*In the Case of Kimberly A. Margotta*, Administrative Hearing at 1-11; T14-24.

## The Applicable Standard

Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In reviewing the Commissioner's decision for disability insurance benefits, a court must determine whether

19

the decision is supported by substantial evidence, *see* 42 U.S.C. § 405(g); *Brown v. Apfel,* 174 F.3d 59, 61-62 (2d Cir. 1999). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)), and is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Brown,* 174 F.3d at 62-63. "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* at 62 (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir. 1983) (*per curiam*)). Substantial evidence "is still a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012). Under this standard, once an ALJ finds facts, a court can reject those facts "only if a reasonable factfinder would *have to conclude otherwise.*" *Id.* (quoting *Warren v. Shalala,* 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original).

A court reviewing a denial of Social Security benefits does not review *de novo* the evidence in the record. *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996); *Jones v. Sullivan,* 949

F.2d 57, 59 (2d Cir. 1991). In evaluating the evidence, "the court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon *de novo* review." *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991) (quoting *Valente v. Secretary of Health & Human Servs.,* 733 F.2d 1037, 1041 (2d Cir. 1984)). If the Commissioner's decision that a claimant is not disabled is supported by substantial evidence in the record, the court must uphold the decision, 42 U.S.C. § 405(g); *Jones,* 949 F.2d at 59; *Arnone,* 882 F.2d at 34, even where substantial evidence may also support the plaintiff's position, *Alston v. Sullivan,* 904 F.2d 122, 126 (2d Cir. 1990), or where a reviewing court's independent conclusion based on the evidence may differ from the Commissioner's. *Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir. 1982), *cert denied,* 459 U.S. 1212 (1983); *Schauer v. Schweiker,* 675 F.2d 55, 57 (2d Cir. 1982).

While the ALJ must set forth the essential considerations with sufficient specificity to enable the reviewing court to determine whether the decision is supported by substantial evidence, he or she need not "explicitly reconcile every conflicting shred of medical testimony." *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir. 1983) (citing *Miles v. Harris,* 645 F.2d 122, 124 (2d Cir. 1981)). A reviewing court

gives deference to the ALJ's evaluation since he or she observed the claimant's demeanor and heard the testimony first-hand. *Pena v. Chater,* 968 F, Supp. 930, 938 (S.D.N.Y.1997), *aff'd sub nom. Mejias v. Social Security Administration,* 445 F. Supp. 741, 744 (S.D.N.Y. 1978).


## Determination of Disability


### *Evaluation of Disability*


Under the Act, every individual who is considered to be "disabled" is entitled to disability insurance benefits. 42 U.S.C. § 423(a)(1). To be considered disabled under the Act, a claimant must demonstrate the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ....

42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A).


The mere presence of an impairment is not sufficient to establish a disability. The claimant is considered disabled:

only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for h[er], or whether [s]he would be hired if [s]he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A), 42 U.S.C. § 1382c(a)(3)(B).

To determine whether an individual is entitled to receive disability benefits, the Commissioner is required to conduct the following five-step inquiry: (1) determine whether the claimant is currently engaged in any substantial gainful activity; (2) if not, determine whether the claimant has a "severe impairment" that significantly limits his ability to do basic work activities; (3) if so, determine whether the impairment is listed in Appendix 1 of the regulations; if it is, the Commissioner will presume the claimant to be disabled; (4) if not, determine whether the claimant possesses the residual functional capacity ("RFC") to perform his past work despite the disability; and (5) if not, determine whether the claimant is

capable of performing other work. 20 C.F.R. § 404.1520; *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *Gonzalez v. Apfel*, 61 F. Supp. 2d 24, 29 (S.D.N.Y. 1999).

The Commissioner must assess the claimant's RFC to apply the fourth and fifth steps of the inquiry. A claimant's RFC represents the most that the claimant can do despite his limitations. 20 C.F.R. § 416.945(a).

*The Treating Physician Rule*

Under the SSA, the Commissioner must evaluate all medical opinion received. *See* 20 C.F.R. § 404.1527(c); *see also Schisler v. Sullivan,* 3 F.3d 563, 567 (2d Cir. 1993). However, "[a] treating physician's opinion must be given controlling weight" when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record. *Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 77 (2d Cir. 2012) (quotation marks omitted). If the treating physician's opinion is not given controlling weight, the Commissioner must nevertheless determine what weight to give it by considering: (1) the length, nature, and frequency of the relationship; (2) the evidence in support of the physician's

opinion; (3) the consistency of the opinion with the record as a whole; (4) the specialization of the physician; and (5) any other relevant factors brought to the attention of the ALJ that support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)(i-ii); *Schisler,* 3 F.3d at 567-69. Other physicians' opinions may be relied upon, even non-examining ones, but the same factors must be weighed as above. 20 C.F.R. § 416.927(e). "More weight must be given to a treating physician than a non-treating one and to an examining source as opposed to a non-examining source." *Petty v. Colvin*, 12 CIV. 1644 LTS RLE, 2014 WL 2465109, at *11 (S.D.N.Y. June 2, 2014); 20 C.F.R. §§ 404.1527(c)-(e), 416.927(c)-(e).

## *The ALJ Properly Reviewed And Considered The Evidence*

As an initial matter, the ALJ analyzed Plaintiff's application under the five-step evaluation as outlined in the Act and 20 C.F.R. § 404.1520. *See* 15-16. In challenging the ALJ Decision, Plaintiff contends that the ALJ erred in (i) failing to combine the effects of all of Plaintiff's impairments; (ii) her evaluation of the medical evidence and the opinion of Dr. Schefflein; (iii) her evaluation of Margotta's credibility; and (iv) relying on evidence from the vocational witness. Each is considered below.

*The ALJ properly combined the effects of all of Plaintiff's impairments*

In considering whether a claimant is disabled under the Act, the ALJ must consider the combined effects of all impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1520(e), 414.1545, 416.920(e), and 416.945; SSR 96-8p. Plaintiff contends that the ALJ erred in assessing separately the contribution of each impairment to others as if each impairment existed alone. However, an examination of the ALJ Decision shows that this is not the case. In coming to her conclusion, the ALJ specifically noted that the determination was made "[a]fter careful consideration of the entire record." *See* T15, 19. Where an ALJ opinion indicates that it will examine a claimant's ailments in combination, and nothing else suggests to the contrary, there is no reason to believe that the ALJ did not do so. *See Rivers v. Astrue*, 280 F. App'x 20, 23 (2d Cir. 2008). Simply because the ALJ broke down Plaintiff's impairments into separate, manageable categories does not indicate the ALJ made her determination through analysis of those singular infirmities in isolation.

In considering all of Plaintiff's impairments, the ALJ

examined Plaintiff's experience with pain, herniated disc, chronic obstructive pulmonary disease and mental illness.

The ALJ noted that Plaintiff has a longstanding history of chronic pain—including a diagnosis of fibromyalgia syndrome by global assessment—which had primarily been treated with narcotics. T19-20. However, laboratory testing had consistently shown negative serological findings. T20, 559, 562, 572, 589, 591. There is some evidence in the record of trigger/tender points on physical examination, but they have not been identified on a regular basis. T19-20, 297, 534, 573, 578. In addition, both treating and examining physicians documented normal range of motion for the lumbar spine and, at times, lack of effort on range of motion testing, which led one doctor to conclude that Plaintiff's pain complaints were subjective in nature. T296-97, 560, 561, 573.

The ALJ also highlighted Plaintiff's January 2007 MRI findings that showed a small disc herniation at the C4-5 level, but noted that the herniation resolved on its own by April 2009 and that Plaintiff was not receiving current treatment for neck pain. T20-21. Other physical evidence, such as an MRI of the lumbar spine, signs of disuse atrophy or weakness in the upper or lower extremities, were nonexistent. T21, 297-298, 534, 555.

The ALJ also found Plaintiff's chronic obstructive
pulmonary disease as not an impairment. T21. Recent treating
records showed normal respiratory effort, with no wheezing,
rubs, rhonchi or rales. T695. Plaintiff is also a long-time
smoker, who has not quit despite advised to do so.

With regards to Plaintiff's mental illness, several
doctors have diagnosed Plaintiff with some form of mental
illness: Dr. Schefflein diagnosed Plaintiff with bipolar
disorder, T424-28; Dr. Dubro concluded that she had a pain
disorder with medical and psychological components, T293; and
Dr. Giudici found that Plaintiff had a major depressive
disorder, post-traumatic stress disorder, a generalized anxiety
disorder and a socialized anxiety disorder. Nonetheless, mental
status evaluations performed from November 2008 through February
2010 show that Plaintiff was alert, fully oriented, pleasant and
cooperative, with no evidence of hallucinations, delusions or
paranoia. T290-92, 407-10, 569. Plaintiff's overall mood has
been described as "euthymic," her affect range was full and her
attention and concentration as intact, except for some mild
memory deficits. T290, 92, 407-10, 566, 569. Dr. Schefflein
evaluated Plaintiff's global assessment of functioning ("GAF")
at 60-65 out of 100 in July 2010, T424, and 75 in February 2010,

T409. Dr. Schefflein's GAF assessment of 60-65 is inconsistent with his assessed "marked" limitations in concentration, persistence or pace made on the same day; a GAF score of 60-65 is associated with "mild to moderate" mental symptoms or functional impairment. Dr. Inman-Dundon also concluded that Plaintiff retained the abilities to perform the mental demands of unskilled work. T330.

Given the record and the ALJ Decision, there is substantial evidence supporting the ALJ's conclusions regarding each individual ailment analyzed and the combination of all impairments on the Plaintiff. Consequently, the ALJ Decision did properly combine all of the Plaintiff's impairments in its analysis of whether to extend benefits to Plaintiff.

*The ALJ Decision did not err in its evaluation of Dr. Schefflein's opinion*

Plaintiff contends that the ALJ Decision incorrectly discounted Dr. Schefflein's opinion regarding Plaintiff's impairments. Pl. Mem. at 18. The ALJ evaluated Dr. Schefflein's opinion during step three of the hearing decision, T17-19, and rated the degree of functional limitations caused by Plaintiff's mental impairments as required by 20 C.F.R. §§ 404.1520a and

416.920a.

The ALJ specifically recognized Dr. Schefflein as the Plaintiff's "current psychiatrist." T18. The ALJ also made examined the evidence supporting Dr. Schefflein's opinion as well as the inconsistencies in his opinions and notes and with other evaluations of Plaintiff. T18-19. For example, only one of Dr. Schefflein's treating opinions made note of Plaintiff's "marked" mental limitations. This opinion stands in contrast to Dr. Schefflein's other opinion which noted that Plaintiff had good concentration, retention of information and impulse control. Dr. Schefflein's opinion was also inconsistent with Dr. Dubro's opinion, which found that Plaintiff's attention span and concentration were intact. T292. These inconsistencies, along with Dr. Schefflein's own GAF evaluation of Plaintiff, provide substantial evidence for the ALJ's conclusion that "[m]entally, the claimant's [activities of daily living] suggest a greater residual functional capacity than alleged." T18. It also lends support to the ALJ's determination that Plaintiff's "marked" mental limitation was temporary.

Plaintiff contends that the ALJ mistakenly asserted that there were no treating opinions in the record. Pl. Mem. at 18. The ALJ Decision makes this comment in the ALJ's examination

30

of step five of the hearing decision; the section was limited to discussions on physical limitations and capabilities. T19-22. The ALJ's limitation of its analysis of Dr. Schefflein's opinion to step three does not eviscerate the ALJ Decision. "[T]he absence of an express rationale for an ALJ's conclusions does not prevent us from upholding them so long as we are 'able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.'" *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010) (affirming the ALJ's step three finding based on the ALJ's analysis of evidence in other portions of the decision that supported the step three finding). Thus, Plaintiff's argument is unsubstantiated, as Plaintiff's mental limitations and Dr. Schefflein's treating opinions were addressed by the ALJ. T17-19.

*The ALJ properly assessed Plaintiff's credibility*

Plaintiff contends that the ALJ failed to properly assess Plaintiff's credibility. Pl. Mem. at 21. Under the Act, a claimant's statements alone as to pain and other symptoms are not conclusive evidence of disability; there must be clinical signs, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a

31

medical impairment that results from anatomical, physiological or psychological abnormalities which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. §§ 404.1529(b), 416.929(b). Nonetheless, with fibromyalgia, "[s]ubjective pain may serve as the basis for establishing disability, even if ... unaccompanied by positive clinical findings of other 'objective' medical evidence." *Green Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (quoting *Donato v. Sec. of Dep't of Health and Human Servs.,* 721 F.2d 414, 418-19 (2d Cir. 1983)).

If the claimant does suffer from a medically determinable impairment, the ALJ must then consider "[t]he extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (quotation marks omitted).

The ALJ did examine Plaintiff's subjective complaints, and found that some of Plaintiff's medically determinable impairments could reasonably have been expected to cause some of Plaintiff's statements regarding her ailments. However, the ALJ concluded that that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [her] symptoms

32

are not credible to the extent they are inconsistent with the above residual functional capacity assessment." T20. In the context of determining a claimant's RFC, "the ALJ is required to take the claimants reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier*, 606 F.3d at 49 (citations omitted). Other evidence that can factor into the ALJ's consideration include a claimant's daily activities, the nature, extent and duration of his symptoms, and the treatment provided. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ took into consideration such other factors when weighing Plaintiff's testimony, and there is substantial evidence in the record to support the ALJ's conclusion. The record shows that Plaintiff's subjective complaints were sometimes inconsistent with objective evaluations, such as when Plaintiff complained of sudden loss of hearing in the left ear in December 2010, but no physical abnormalities of the ear canal or tympanic membranes were present and an examination showed normal hearing. T642-56. The record also indicates that although Plaintiff claimed that her impairments reduced activities of daily living, Plaintiff could take care of her hygiene

33

regularly, prepare meals, perform light cleaning and laundry, help her father with food shopping, manage money and drive a car. T292. A neurological examination in July 2011 also showed normal range of motion of the thoracic/lumbar spine, negative straight leg raising, bilaterally, and full muscle strength in the upper and lower extremities, with no muscle atrophy, weakness, sensory or reflex deficits in the upper or lower extremities, as well as "no objective limitations to gait, fine or gross motor activities, communication or activities of daily living." T578-79.

Given such a record, there is substantial evidence that the ALJ exercised proper discretion when she chose to not completely disregard Plaintiff's testimony, but to only evaluate it when it was consistent with her RFC assessment. The ALJ properly exercised her discretion in evaluating Plaintiff's credibility and testimony.

*The ALJ did not err in relying on evidence from the vocational witness*

At step five, the ALJ must examine whether there are available jobs which fit the individual's limitations and skills. This can be done through the use of a hypothetical

34

questions and answers to a vocational expert. *See Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984). At the Hearing, the ALJ presented vocational expert Meola with a hypothetical of an individual who could sit for up to eight hours a day, three hours at one time; stand for up to five hours a day, an hour at a time; walk for up to three hours a day, an hour at a time; lift up to 20 pounds continuously and up to 50 pounds occasionally, could carry up to 20 pounds continuously; and frequently engage in overhand reaching, and continuously reach in all other planes, as well as handle, finger, feel, push, occasionally climb ladders or scaffolds; occasionally be exposed to unprotected heights and frequently to moving mechanical parts, but not to dust, fumes, pulmonary irritants, extremes of temperature and vibrations; and tolerate moderate exposure to office noise. T88-89.

Plaintiff contends that the ALJ erred in its hypothetical question to Meola: Plaintiff argues that the ALJ should have incorporated Dr. Schefflein's finding that Plaintiff suffered from a lack of concentration and Dr. Puri's recommendation that Plaintiff should avoid strenuous activities or repetitive movements.

As an initial matter, and as previously discussed, the

ALJ's rationale for not adopting Dr. Schefflein's opinion was support by substantial evidence. T17-19. The ALJ's decision to not adopt Dr. Schefflein's opinion in the posed hypothetical was also supported by substantial evidence.

With regards to Dr. Puri's recommendation, it must first be noted that Dr. Puri determined that Plaintiff did not have any objective limitations to communication, fine motor or gross motor activity. T579. Dr. Puri also recommended that Plaintiff "not carry out strenuous activities or repetitive movements *secondary to her above history*."[2] *Id.* (emphasis added). Dr. Puri also noted that Plaintiff could perform non-overhead reaching, handling, fingering, feeling, push and pull motions with both hands continuously. T582. Although there is somewhat contradictory evidence in the record, there is substantial evidence that the ALJ incorporated the totality of Dr. Puri's recommendation in her instructions to Meola. Moreover, the ALJ was not required to incorporate restrictions into the RFC or pose a hypothetical to Meola that was not supported by the record. *See Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983) (Secretary's burden in showing the existence of alternative substantial jobs abundant in the national economy upheld where substantial record evidence supported the

---

[2] Dr. Puri does not expand on the meaning of the phrase "secondary to her above history".

assumptions the vocational expert adopted for his opinion).

Plaintiff contends that Meola's testimony is suspect with regards to the number of jobs existing in the region where Plaintiff lived was incorrect. A review of the DOT requirements and situations for the three jobs Meola identified – hand packager, DOT 559.687-074, assembler, DOT 713.684-014, and tag machine operator, DOT 649.685-118 – does not reveal any conflict with the RFC adopted in the ALJ Decision. All of these are light, unskilled jobs with no exposure to concentrated respiratory irritants. Furthermore, Plaintiff has not presented any evidence that rebuts Meola's identification of jobs existing in significant numbers that Plaintiff could perform.

In sum, there is substantial evidence that the ALJ did not err in relying on the evidence provided by the vocational expert. Meola identified jobs based on the vocational profile posed in the ALJ's hypothetical, Plaintiff has not shown how Meola's answers were mistaken.

## Conclusion

Based on the reasoning set forth below, Plaintiff's motion is denied and Defendant's motion for judgment on the pleadings is granted and the Complaint dismissed.

It is so ordered.

New York, NY
June /8, 2014

ROBERT W. SWEET
U.S.D.J.